### UNITED STATES v. SOUTHERN RY. CO. (two cases).

(District Court, E. D. Tennessee, N. D. July 28, 1921.)

#### Nos. 82, 89.

1. **Courts ⬅50—Suit for penalties under Safety Appliance Act not limited to particular division of district.**

   Under Safety Appliance Act, § 6 (Comp. St. § 8610), providing that penalties for violation may be recovered by suit in the District Court "having jurisdiction in the locality where such violation shall have been committed," where a district has several divisions, jurisdiction of such suit is not limited to the division in which the violation was committed.

2. **Railroads ⬅229—Penalty incurred by permitting hauling of defective car by contractor.**

   Under Safety Appliance Act, § 6 (Comp. St. § 8610), making a railroad company subject to penalty for "hauling or permitting to be hauled" on its line any defective car, it is no defense that the hauling of a defective car over a switch track of defendant was done by another company under an agreement by which it was paid by defendant so much per car for switching.

At Law. Suits, in the Northern division of Eastern District of Tennessee, by the United States against the Southern Railway Company to recover penalties for hauling and permitting to be hauled over its line within the jurisdiction of the court certain cars not equipped as required by the Safety Appliance Act, consolidated. Verdict in favor of the United States. Motion for new trial by Southern Railway Company. Denied.

W. T. Kennerly, U. S. Atty., of Knoxville, Tenn.
L. D. Smith, of Knoxville, Tenn., for defendant.

SANFORD, District Judge. [1] 1. The first ground of the motion is based on the alleged want of jurisdiction in the court arising from the fact that the violations of the Safety Appliance Act (Comp. St. §§ 8605–8612) established by the proof were shown to have been committed in the Northeastern Division of this District.

Section 6 of the Act provides that for every violation of the Act the carrier shall be liable to a penalty "to be recovered in a suit * * * to be brought * * * in the District Court of the United States having jurisdiction in the locality where such violation shall have been committed"

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

It is the established general rule that jurisdiction in a Federal District Court is coextensive with the district. This is not nullified by the mere multiplication of places at which courts are to be held or the mere creation of divisions of the court. These do not disturb the general jurisdiction of the district; the place of trial having no necessary connection with territorial jurisdiction. To effect such change there must be legislation which, by clear definition and not mere implication, distributes the general jurisdiction of the district between the courts of the several divisions. Rosencrans v. United States, 165 U. S. 257, 260–263, 17 Sup. Ct. 302, 41 L. Ed. 708; Barrett v. United States (No. 51) 169 U. S. 218, 221, 18 Sup. Ct. 327, 42 L. Ed. 723; Matheson v. United States, 227 U. S. 540, 542, 33 Sup. Ct. 355, 57 L. Ed. 631; Clement v. United States (8th Circ.) 149 Fed. 305, 309, 79 C. C. A. 243; Dwyer v. United States (9th Circ.) 170 Fed. 160, 162, 95 C. C. A. 416; United States v. Sutherland (D. C.) 214 Fed. 320, 322; Gopcevic v. Packing Corporation (D. C.) 272 Fed. 994, 996, and cases cited. The jurisdiction otherwise clearly existing throughout the entire district cannot be destroyed "by mere inferences and doubtful construction." Rosencrans v. United States, 165 U. S. at page 263, 17 Sup. Ct. at page 305 (41 L. Ed. 708).

Section 107 of the Judicial Code (Comp. St. § 1094), dividing the State of Tennessee into three districts, merely enumerates the counties which shall constitute the several divisions of each district, and does not make any distribution of territorial jurisdiction between them. Nor is there any general provision of the Code or other statute distributing the general jurisdiction of the districts in transitory actions of this character between their several divisions, as is done, for example, in section 53 of the Code (Comp. St. § 1035) in reference to prosecutions for crimes or offenses. On the contrary, the general provision of section 43 of the Code, re-enacting Rev. St. § 732 (Comp. St. § 1025)—the one later and the other earlier than the Safety Appliance Act—that all pecuniary penalties "may be sued for and recovered either in the district where they accrue or in the district where the offender is found," makes no reference to the several divisions of the districts. Furthermore, the provision of section 53 of the Code that, when a district contains more than one division, "every suit not of a local nature against a single defendant must be brought in the division where he resides," implies that where, as in the instant case, the single defendant does not reside in the district, the suit, if otherwise maintainable within the district, may be brought in any division thereof. See Reich v. Tennessee Copper Co. (D. C. Tenn.) 209 Fed. 880, and McCullough v. Groceries Corp. (D. C.) 247 Fed. 880.

The ultimate question then is whether a distribution of the general territorial jurisdiction of the districts is effected by the provision in the Safety Appliance Act itself, that the suit to recover the penalty is to be brought in the District Court "having jurisdiction in the locality where such violation shall have been committed." No reference is therein made to the particular division of the district in which the violation was committed. The words "having jurisdiction in the locality where such violation shall have been committed" are, in my

opinion, merely descriptive of the District Court in which the suit is to be brought, more apt, in fact, than the words "in the district where they [the penalties] accrue," as used in section 43 of the Code, and were not intended to distribute the general jurisdiction of such District Court, coextensive with the entire district, and limit it to the particular division in which the violation was committed. If this had been the intention of the Congress, it would have been aptly expressed by language similar to that used in section 53 of the Code in reference to prosecutions for crime, that is, by providing that where a district contained more than one division, the suit should be brought in the division where the violation was committed.

And certainly the provision in the Act, as written, is, to say the least, of such "doubtful construction," that it cannot, under the rule stated in Rosencrans v. United States, 165 U. S. at page 263, 17 Sup. Ct. at page 305 (41 L. Ed. 708), destroy the general jurisdiction of the court throughout the entire district, otherwise clearly existing.

The first ground of the motion for new trial, relating to both of the consolidated cases, must hence be overruled.

[2] 2. The amended motion for a new trial relates to the C., St. P., M. & O. car No. 32528, involved in cause No. 89. This car, which was in a defective condition, was being switched by a Norfolk & Western train crew over the switching tracks of the defendant, to be thereafter hauled by the defendant over its line when placed in a train. These switching tracks were owned and maintained by the defendant as a part of its line, but were operated by the Norfolk & Western Railway Co. under an agreement between the two companies by which the Norfolk & Western conducted all switching operations, with its own engines and employees, under its own supervision and control, and was paid by the defendant for the switching done for it on a basis of so much per car; the requests for switching for the defendant in making up cars in the yard being given by the defendant's superintendent to the yard master of the Norfolk & Western.

On the undisputed facts, as this car was being hauled over the defendant's own line and for its own purposes in making up its own trains, the fact that it was being hauled by the Norfolk & Western as an independent contractor, rather than as the defendant's agent, does not, in my opinion, relieve the defendant from liability under the provisions of the Safety Appliance Act. Section 6 of the Act, as amended by the Act of April 1, 1896, c. 87, 29 Stat. 85 (Comp. St. § 8610), provides that any interstate common carrier "hauling or permitting to be hauled or used on its line any car in violation of the provisions of this Act, shall be liable to a penalty." That is, the carrier is liable to the penalty if it either (1) itself, that is, by its own agents, "hauls" a defective car over its own line, or (2) if it "permits" another to haul or use a defective car on its line. Clearly, in the instant case, the defendant authorized and "permitted" this car to be hauled over its own line and for its own purposes, by the Norfolk & Western. It is therefore liable to the penalty imposed by the Act, for having, as alleged in the declaration, "permitted" such hauling. See United States v. Northwestern Railroad (D. C.) 235 Fed. 965, 969. Where

permission is granted another to use the carrier's line, actual knowledge of the defective condition of the car when hauled pursuant to such permission is not essential. At page 969. See St. Louis Railway v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061, and Chicago Railway v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582, as to the absolute duty of carriers in excluding defective equipment from use on their lines, irrespective of actual knowledge of the defects or the exercise of reasonable care in regard thereto.

And as this car was hauled over the defendant's own line and for its own purposes, I find it unnecessary to determine the somewhat metaphysical question whether, if the car had been hauled over the defendant's line for the Norfolk & Western's own traffic purposes, under a joint arrangement permitting such use, the defendant's line would, within the meaning of the Act, have been the line of both companies at the same time, so as to have made the Norfolk & Western liable for hauling the defective car and the defendant liable for permitting it to be hauled. See Philadelphia Railway v. United States (3d Circ.) 191 Fed. 1, 4, 111 C. C. A. 661; Gray v. Louisville Railroad (C. C. Tenn.) 197 Fed. 874, 876; United States v. Northwestern Railroad (D. C.) 235 Fed., supra, at page 969. Clearly while the defective car was being hauled by the Norfolk & Western over the defendant's own line for the defendant's own purposes, the line did not cease to be the defendant's line, so as to relieve it from liability for permitting it to be hauled thereon; regardless of whether, under such circumstances, the Norfolk & Western would also be liable for the actual hauling, a matter not necessary to be determined.

This ground of the motion, as set forth in the amendment, must accordingly be likewise overruled.

3. An order will accordingly be entered denying the defendant's original and amended motions; and judgments will be entered in favor of the United States upon the verdict in the consolidated causes, for the penalties provided by the Act, with costs.

---

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
285 F.—49